ELMHORST et al. v. MAZIROFF et al.

(Supreme Court, Special Term, Kings County. February 23, 1916.)

1. ATTORNEY AND CLIENT ☞80—AUTHORITY TO SELL—POSSESSION.

Where an attorney by false representations obtained possession of his client's mortgage and bond, his possession did not clothe him with any apparent authority to sell the obligations.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 143; Dec. Dig. ☞80.]

2. MORTGAGES ☞257—RIGHTS OF MORTGAGEE AND ASSIGNEE.

Where an attorney obtained possession of his client's bond and mortgage by false representations, and assigned them, the assignee in turn assigning to another, which also assigned for valuable consideration to a purchaser in good faith without notice, as between the ultimate assignee and the mortgagee, the mortgagee's rights were superior.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 682–687; Dec. Dig. ☞257.]

3. MORTGAGES ☞260—ESTOPPEL OF MORTGAGEE.

A mortgagee, from whom her attorney by false representations procured the bond and mortgage and forged an assignment thereof, who acquiesced in the mortgagor's payment of interest to an ultimate assignee, who took in good faith, for value, the corporation which assigned to such ultimate assignee meanwhile going out of business, was estopped to assert her mortgage against mortgagor and assignee.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 692; Dec. Dig. ☞260.]

4. MORTGAGES ☞257—ESTOPPEL OF MORTGAGEE—EXTENT OF PROTECTION.

The ultimate assignee, to whom came a mortgage fraudulently procured from his client by an attorney, the client being estopped to assert her claim against the land by acquiescence in the payment of interest by the owner to the assignee, was entitled to protection only to the amount he paid for the mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 682–687; Dec. Dig. ☞257.]

Action by Louise Elmhorst and another, as executrices of the last will of Mary Fint, deceased, against Jacob Maziroff and others. Judgment for the defendants in accordance with the opinion.

Morgan & Olsen, for plaintiffs.

Simon Berg, of Brooklyn (Frederick Van Zandt, of New York City, of counsel), for defendants.

CRANE, J. [1] There can be no question about the validity of the assignment of the first mortgage to Remsen. It was a forgery; the crime being committed by one Edward H. M. Roehr, an attorney at law, in order to procure money for his own benefit. Neither can there be any question of estoppel growing out of the fact that Roehr was the at-

torney for Mrs. Fint, and obtained from her possession of the bond and mortgage by falsely representing that a tax was due thereon, which he would pay, and that by means of this possession he was enabled to transfer to an innocent purchaser these papers with the forged assignment. Possession thus obtained did not clothe Roehr with any apparent authority to sell the bond and mortgage. The same condition would have existed had he purloined ·the papers and then sold them. So far as the transactions of Roehr alone are in question, the plaintiffs are not barred from foreclosing the mortgage, just as if no assignment had ever been made.

[2] The question in this case is one of estoppel by acquiescence after discovery of the forgery and fraud. It is because of the failure to act, to do something after knowledge of all the facts were brought home to the mortgagee, that estoppel exists, if at all. Estoppel growing out of silence or acquiescence implies: First, a duty to speak; second, a failure to speak; third, damage to a third party directly due to this silence. In this case we have all these elements completely established.

Mrs. Mary Fint had a mortgage of $8,900 on property at 62 Tompkins avenue, Brooklyn, N. Y., owned by Jacob Maziroff. On June 11, 1906, Maziroff deeded the property to the defendant Chas. Fidler, the present owner of the equity. In July, 1906, Lawyer Roehr obtained possession of the bond and mortgage as above stated from Mrs. Fint and on July 24, 1906, forged an assignment thereof to one William M. Remsen, who in turn assigned them to the Montauk Brewing Company, of which Roehr was president. On September 18, 1906, the Montauk Brewing Company for full and valuable consideration sold and assigned the bond and mortgage to the defendant Thos. H. Heffron, who was a purchaser in good faith without any notice of defects in the securities he was taking. Roehr had not only forged the name of Mrs. Fint to an estoppel certificate, but also on the next interest day, November 2, 1906, paid to her the interest then due. Up to this point, therefore, we have two innocent persons, the mortgagee and an assignee of the stolen mortgage; between them the assignee would be the loser by the thieving lawyer. But at this point the equities begin to change and the law, to prevent an unnecessary injustice to the mortgagee and the owner of the equity, will, because of the subsequent events, bar the plaintiff from foreclosing what otherwise is a perfectly good security.

[3] By the terms of the mortgage interest was due again on May 2, 1907; also on May 1, 1907, there was to be paid $1,500 on the principal. These matters were known to Mrs. Fint. She expected the money to be paid by the owner of 62 Tompkins avenue, and she expected that payment would be made to her lawyer, Roehr, as he had collected the interest for her during the past two years. Having demanded, through her daughter, at various times after July, 1906, the return of her securities, she discovered in April, 1907, and before the above amounts became due, that Roehr had absconded, and at once knew that something was wrong with the mortgage intrusted to him. In May, 1907, she knew all the facts—the forged assignment, and the

sale and delivery of her papers by Roehr to the brewing company and to Heffron.

A day before the due date the owner of the equity, at that time Chas. Fidler, paid to the assignee, Thos. H. Heffron, the $1,500 due May 1, 1907, on the principal, and the interest due May 2, 1907. The owner acted with entire good faith in the matter, after having the records examined by his lawyer, and, as before stated, the assignee, Thos. H. Heffron, had every reason to believe and did believe that he held a valid mortgage by proper assignment.

The mortgagee and her representatives after her death, the plaintiffs herein, did not notify the owner of the property or the assignee of the facts which had been discovered in April and May, 1907, viz., the forgery of the assignment, or demand at any time payment of the amounts due May 1 and 2, 1907, or the amounts of interest thereafter becoming due. Besides placing the matters in the hands of an attorney, Mrs. Fint and her executrices did nothing until the commencement of this action in March, 1915. From May, 1907, therefore, down to November, 1914, the owner of the property, in good faith and ignorant of the true state of things, paid his interest promptly to the assignee, Thos. H. Heffron, who received it in like good faith and also in ignorance of any claim by the original mortgagee.

Mrs. Fint, therefore, knowing in May, 1907, that her mortgage had been stolen, assigned by forgery to Heffron, and also realizing, as she must have done, that interest was being paid or was likely to be paid to the assignee, failed to notify the owner or the assignee of the facts, but rather remained silent, while the owner paid interest as it became due to the person apparently entitled thereto. In March, 1915, she, or her estate, for the first time demanded, by the bringing of this suit, not only the $8,900, the face of the mortgage, but all the interest due since November 2, 1906, amounting to $3,035. To state this claim, conscious that so many interest days, besides the due date of the mortgage, have passed without any demand for payment, would indicate that equity was lacking somewhere.

I believe that when the plaintiff learned all the facts she was under a duty to notify the owner of the equity, if with reasonable effort it could be done, even if she were not called upon to notify the apparent assignee, and that by silently acquiescing in his payment to the assignee of part of the principal and of the interest for nearly eight years she is now barred from asserting her claim. Whether this be so or not, it certainly becomes the equitable thing to do, by the existence of another fact.

In May, 1907, when the mortgagee ascertained the startling facts about the mortgage, if she had notified the owner of the property, or foreclosed for nonpayment of interest, the apparent assignee would himself have become aware of the worthlessness of the mortgage sold to him by the Montauk Brewing Company, and could have claimed of it the repayment of his money considerations. The brewing company was for two years thereafter solvent, and the assumption is reasonable that something could have been recovered. Roehr, the forger, had been president of the company. But, whatever the re-

sult, Heffron would have had a claim against his assignor which the courts would have enforced. This right and remedy has long since gone, as the brewing company has ceased to exist, having disposed of all its assets in 1909. Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; Continental National Bank v. National Bank of Commonwealth, 50 N. Y. 575; Rothschild v. Title Guar. & Trust Co., 204 N. Y. 458, 97 N. E. 879, 41 L. R. A. (N. S.) 740; People's Trust Co. v. Smith, 215 N. Y. 488, 109 N. E. 561.

We have therefore the three elements of estoppel by silence or acquiescence: First, a duty in Mrs. Fint to notify the owner to pay interest to her, to demand it, or to foreclose for nonpayment within a reasonable time; second, a failure to thus speak or act; third, damage resulting from this failure to the owner, who might have to pay his interest twice, and to the assignee, by losing his remedy against his assignor.

It does not seem possible that Mrs. Fint and her estate could remain silent under such a state of facts for any length of time and come down at pleasure upon the owner for a large sum of accumulated interest, paid under an honest mistake to the wrong, but apparently legal, holder. Many prosperous men could thus be rendered insolvent. Where is the limit to be placed? At the point where delay and silence become unreasonable, and work, as in this case, an unnecessary injury. Negligence has defeated the right of action as in the Leather Manufacturers' Bank Case above cited.

[4] The defendant Heffron, however, is entitled to no more than he paid for the mortgage, which was $8,000. Of this $1,500 has been paid to him, leaving $6,500 as a good and valid first mortgage by assignment, of which he is the holder and possessor, and on which amount he is entitled to interest from November 14, 1914. The plaintiffs are consequently entitled to the balance, viz., $900, which becomes a second mortgage for that amount, and on this there is due interest at the mortgage rate from the same date, November 14, 1914. Thus the mortgage upon the property is $8,900, reduced by payment of May 1, 1907, to $7,400, of which amount the defendant Heffron holds $6,500 as a first mortgage and the plaintiffs $900 as a second mortgage. If Heffron has extended the time of payment, it will also apply to this $900 of the plaintiffs. The interest, however, will be apportioned as above stated, and paid within the next 60 days and hereafter as it becomes due.

Let judgment be entered in accordance with this decision. No costs to any party. Absconding lawyers have caused all this trouble.